[No. 1454.]

E. C. ROHRER v. THE STATE.

1. PERJURY—INDICTMENT.—The perjury imputed to the defendant consisted in his willful making of an affidavit before an authorized officer, charging that one A was justly indebted to him in the several amounts of an itemized account, when in fact A was not so indebted to him. See the opinion *in extenso* for an indictment for perjury in the making of such an affidavit, *held* insufficient, in that it fails to set out the account with the oath, attached thereto ; and in that it fails to negative individually and by express contradiction the several items falsely sworn to by the defendant.

2. SAME—EVIDENCE.—See evidence held fatal to a judgment of conviction because of variance between the *allegata* and the *probata*.

APPEAL from the District Court of Bell. Tried below before L. F. Williams, Esq., Special Judge.

The opinion discloses the nature of the case. A term of five years in the penitentiary was the punishment assessed by a verdict of guilty.

S. N. Strange testified, for the State, that he was a justice of the peace for precinct No. 5 in Bell county. On or about the nineteenth day of August, 1882, the defendant made oath to a certain account before him as such officer, and left it with him for the purpose of bringing suit upon it. The said account was made out in favor of the said defendant and against one Henry Austin. The witness identified the account handed him, as the same. It reads :

"Henry Austin,
　　　　　"To E. C. Rohrer,　　　　　　　　　　　　Dr.

| | |
|---|---:|
| Advertising six months, according to agreement........$ | 9 90 |
| Rancier's account charged to him while he worked for him, | 8 00 |
| Polishing and recording goods, ready for sale, two days.. | 6 00 |
| Attending sales and neglecting work for same, for H. Austin, 30 days, $1.50 per day....................... | 45 00 |
| Agreement for rent with James, on account of goods, 6 months @ $10.00...................................... | 60 00 |
| Paid Carleton, drayage.................................. | 75 |

The oath made to the same by the defendant is in the following affidavit:

"THE STATE OF TEXAS, }
     "County of Bell.     }
   "Before me, the undersigned authority, this day personally appeared E. C. Rohrer, who, after being by me duly sworn, on oath says that the above account is, within the knowledge of affiant, just, true, and that it is unpaid, and that all just and lawful offsets, payments and credits have been allowed.
   "Witness my hand, this the nineteenth day of August, A. D., 1882.

                              "S. N. Strange,
                         "J. P., Precinct No. 5, B. C."

This oath, the witness stated, was made voluntarily by the defendant. Henry Austin filed a plea in abatement, alleging that he did not reside in precinct number five, but in precinct number one; wherefore the said cause was dismissed at the plaintiff's cost. The affidavit filed by the defendant was withdrawn by C. B. Patterson, the defendant's attorney in said cause, and has never since been returned to the witness's court.

W. Y. McFarland testified, for the State, that at the time of the occurrence of a large fire in Belton, Bell county, Texas, he was the custodian of a written contract executed by and between the defendant and Henry Austin. This contract was deposited in the desk of the witness, and with the office and other contents was destroyed by the said fire. The provisions of that contract, which the witness remembered distinctly, were that Austin, who was a jeweler, was to furnish the defendant stock from his jewelry establishment, to be sold by the defendant on commission, he, the defendant, to account to Austin for the marked price on the goods, and to retain all over that price for which he could sell them; accounts of sales to be made on the Saturday of each week. There was no stipulation in the contract that Austin was to defray any part of the expense attending this enterprise. The contract specified no definite period limiting the continuance of this agreement, but, on the contrary, it expressly provided that either of the parties were at liberty to rescind the same at any time, and for any cause. Rohrer and Austin entered into this contract some time about the latter part of December, 1881.

Henry Austin, for the State, corroborated the testimony of the

witness McFarland as to the contents of the contract between himself and the defendant, which contract, he said, was placed in the hands of McFarland, and destroyed by fire. This contract was executed on the twenty-eighth day of December, 1881.

Pursuant to this contract, the witness let the defendant have over one thousand dollars worth of goods, to be taken to Temple, Bell county, and sold and accounted for as provided by the contract. Within twenty-eight days thereafter the witness reclaimed and recovered the goods which he furnished the defendant, except such as had been sold by the defendant in the meantime, and he received from the defendant only a portion (about nine dollars) of the money due him on the goods thus sold.

Being shown the account testified to by the witness Strange, the witness pronounced it untrue and false, and declared that he was not then and had never at any time been indebted to the defendant, even as much as a single cent. On the contrary, he had loaned the defendant the sum of fifty dollars in money, no part of which had ever been paid back to the witness by the defendant or other person. Referring to the item of advertising as set out in the account, the witness testified that he agreed verbally with the defendant to pay for the insertion of a business card in the Temple Times newspaper, provided the defendant would insert it in the name of the witness, making it a means of advertising the witness's business in Belton as well. Contrary to this verbal agreement, the defendant did not so insert the card, but inserted it in the name of himself, the defendant. These transactions, under the written contract referred to, were the only business relations which had ever existed between the witness and the defendant. The witness was cited to answer the suit of this defendant in Justice Strange's court. He employed W. Y. McFarland to attend to it, and did not of his own knowledge know how it had been disposed of. The witness's feelings towards the defendant were such as would be natural to a man who had had his goods made away with, money spent, and then sued on a false account by another.

Ed. Rancier and N. Austin, for the State, testified that they saw and read the contract between the defendant and Henry Austin, and they corroborated McFarland and Henry Austin as to its contents.

W. Y. McFarland testified, for the defense, that he was the attorney for Austin in the suit of E. C. Rohrer v. Henry Austin, filed in the justice's court of precinct number five, and that

when that suit was called for trial, he filed a plea in abatement, which plea was not acted upon by the justice of the peace, but the suit was withdrawn by the defendant.

C. B. Patterson testified, for the defense, that he was the attorney for the defendant in the suit filed by him against Henry Austin, in the justice's court of precinct number five; that McFarland, as Austin's attorney, filed a plea in abatement to the suit, which was sustained by the justice, and the suit was dismissed at the plaintiff's (Rohrer's) cost; whereupon the witness withdrew the account upon which the suit was filed from precinct number five for the purpose of filing it in the proper court, and retained it until he turned it over to D. E. Patterson, county attorney of Bell County.

The motion for a new trial attacked the sufficiency of the evidence, in that Henry Austin's testimony was not corroborated, and denounced the verdict as contrary to both the law and the evidence.

The motion in arrest of judgment was based upon the grounds:

1.   Because the same is vague, uncertain and indefinite.

2.   Because the verdict is for perjury, when the indictment charges nothing more than false swearing.

3.   Because the indictment charges no offense known to the law.

4.   Because the defendant was not served with a certified copy of the indictment, as it was on file in the clerk's office, after it was presented by the grand jury.

5.   Because the indictment fails to set forth the necessary requisites of perjury.

No brief for the appellant has reached the Reporters.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J.   The appellant was convicted of perjury under an indictment, the charging part of which is as follows: "did then and there make his personal appearance before S. N. Strange, a justice of the peace in and for Bell county, Texas, and deliberately and wilfully make affidavit, the oath being then and there duly and legally administered by the said justice of the peace, who was then and there authorized by law to administer said oath, and take the said affidavit, that H. F. Austin was justly indebted to him, Rohrer, in the following items and amounts, to-wit: advertising, $9.90; work, $8.00; polishing and recording

goods, $6.00; selling and taking care of goods, 30 days, $45.00; agreement with James for rent at $10 per month for six months, $60.00; paid drayage, 75c.; and filed the same with the said justice of the peace for suit against said H. F. Austin. That the said affidavit aforesaid was material and necessary for the purpose of prosecuting the said suit against the said H. F. Austin, and that the said affidavit made by the said E. C. Rohrer was false, which he the said Rohrer then and there well knew; and against the peace and dignity of the State."

The defendant moved in arrest of judgment, which motion was overruled by the court. Is this a good indictment for perjury? We think not, upon two grounds:

1. The indictment fails to set out the account, with the oath of defendant attached thereto. It is true that this indictment sets out an account, and alleges that defendant swore to its correctness, etc., but it does not pretend to insert the instrument to which defendant swore before the justice of the peace, nor does it contain the oath administered to the defendant by the justice. This we think is fatal.

2. The averment in said indictment that the affidavit made by the defendant was false, which he well knew, is not an assignment of perjury. In order to negative the false matter the indictment must proceed by particular averments (or, as they are technically termed, assignments of perjury,) to negative that which is false, and it is necessary that the indictment should thus expressly contradict the matter falsely sworn to by the defendant. The usual form for denying the false matter is as follows: "Whereas, in truth and in fact the said H. F. Austin was not indebted to the defendant for advertising, work, or polishing and recording goods," etc., or that defendant had not allowed the said Austin all proper and legal credits, etc., selecting those items which are false, and thus making them the assignment of perjury. All of the items or particulars to which defendant falsely swore, may be embraced in one count. While it may be necessary to set forth the whole matter to which the defendant swore, in order to make the rest intelligible, though some of the circumstances had a real existence, yet the word *falsely* does not import that the whole is false, and when the proper averments come to be made it is not necessary to negative the whole, but only such parts as the prosecutor can falsify, admitting the truth of the rest.

This indictment simply alleges that the affidavit made by

defendant was false, and that he knew it. In what particular was it false? What item in the account? Did the falsity consist in the amount of the item? if so, which one? Or did it consist in failing to give Austin proper credits? To our mind such an indictment as this wholly fails to inform the defendant of what he is called upon to answer. As above stated, the word *falsely* does not import that the whole is false, but simply means that it is false in some particular. It may or may not be to the whole extent. It may or may not be false in regard to a matter which could be made the basis of perjury. It is too uncertain, and would admit proof not only in regard to the items of indebtedness and credit, but dates, etc. Suppose an account contained an hundred items; under such an indictment the correctness of each item would be put in issue. How could defendant prepare to meet such an indictment except by preparation to meet every item? These assignments, however, to be good must be in regard to a material matter—a matter upon which an assignment of perjury could legally be made. An affidavit may be false, and yet not in regard to a matter upon which an assignment of perjury can be legally made. (Whart. Crim. Law., sections 1300-1-2-3; Bishop's Crim. Procedure, sections 918, 919, 921.)

We call attention to the variance between the items charged in the indictment and those shown in the proof. If this indictment were good, we are of the opinion that the variance above alluded to would be fatal to the judgment.

The court erred in overruling the motion in arrest of judgment; for which the judgment is reversed and the prosecution dismissed.

*Reversed and dismissed.*

Opinion delivered November 11, 1882.